**Roger L. MacBRIDE et al., Plaintiffs-Appellants,**

v.

**Reubin O'D. ASKEW, etc., et al., Defendants-Appellees.**

No. 76-3735.

United States Court of Appeals, Fifth Circuit.

Oct. 13, 1976.

William H. Adams, III, Jacksonville, Fla., for plaintiffs-appellants.

James D. Whisenand, Deputy Atty. Gen., Michael M. Parrish, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants-appellees.

Before WISDOM, GEE and TJOFLAT, Circuit Judges.

WISDOM, Circuit Judge:

MacBride and Bergland, plaintiffs-appellants, request an injunction pending appeal to place their names on the Florida general election ballot as independent candidates for President and Vice President of the United States. The district court refused to order the state to include their names.

Because the election rapidly approaches, this emergency motion required resolution today.[1] We deny the request for an injunction pending appeal.

The appellants, nominees of the Libertarian Party, have qualified as candidates for President and Vice President in twenty-eight states. They will lead the Party ticket in all but six of these states, where they will appear on the ballot as independents. In Florida, they have campaigned as the candidates of the Party, which has qualified as a "minor political party" under Fla.Stat. Ann. § 97.021(14) (Supp.1976). The campaign has included a petition drive to gather signatures to qualify them as minor political party candidates pursuant to Fla. Stat.Ann. § 103.021(3) (1973).[2] Although the drive collected 20,000 signatures, the Party received certification for only 800, less than 2.2 percent of the required 36,000.

After failing to qualify as minor party candidates, MacBride and Bergland brought this suit to force the state to list them as independent candidates. Florida has no statutory provision for the qualification of independent candidates for President and Vice President. In *Storer v. Brown*, 1974, 415 U.S. 724, 746, 94 S.Ct. 1274, 39 L.Ed.2d 714, the Supreme Court held that the First Amendment requires the states to provide a method of qualification for *both* party candidates and independent candidates. Accordingly, the district court held unconstitutional the lack of a mechanism in the Florida statutes for the qualification of independent candidates. Nevertheless, the court refused to order the names of MacBride and Bergland printed on the ballot because they had not demonstrated sufficient community support in Florida for their candidacies, as required by *Storer*, 415 U.S. at 746, 94 S.Ct. 1274.[3]

Before we can issue a mandatory injunction, we must find (1) that a substantial likelihood exists that the district court abused its discretion in failing to grant relief, (2) that the appellant faces a substantial threat of irreparable injury, (3) that the threatened injury to the appellant outweighs any harm the temporary relief would impose on the appellee, and (4) that the relief would not disserve the public interest. *Beverly v. United States*, 5 Cir. 1972, 486 F.2d 732; *United States v. Lynd*, 5 Cir. 1962, 301 F.2d 818, *cert. denied*, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125; *cf. Florida v. Calloway*, 5 Cir. 1974, 489 F.2d 567. We deny the injunction in this case because there is not a substantial likelihood that on appeal we would find that the district court abused its discretion by refusing to order the state to print the candidates' names on the ballot.

The first and fourteenth amendments protect the right of citizens to associate with others in political parties, to participate in the nomination of candidates, and to vote for the candidates of their

---

1. By affidavit the state has indicated that it must begin printing the ballots tomorrow, October 12, 1976, to ensure distribution by election day.

2. The statutes states in part:

 (3) Minor political parties which have not elected a president of the United States since January 1, 1900, may have the names of their candidates for president and vice-president printed on the general election ballots if a petition is signed by one percent of the registered electors of Florida, as shown by the compilation by the department of state for the last preceding general election. A separate petition shall be submitted from each county from which signatures are solicited. Said petition shall be submitted to the supervisor of elections of the respective county . . . . .. The supervisor shall check the names and shall . . . certify the number shown as registered electors of said county, and said supervisor shall be paid by the person requesting the certification the sum of ten cents for each name checked. . . .

3. Under *McCarthy v. Briscoe*, September 30, 1976, —— U.S. ——, 97 S.Ct. 10, 50 L.Ed.2d 49, the district court followed the correct approach toward identifying whether community support existed. The district judge first examined the nationwide support for their candidacies and then asked whether their support in Florida differed from that found in the other states. Because we deny the mandatory injunction on other grounds, we do not reach the factual question decided by the district court about the substantiality of actual support for the candidacies of MacBride and Bergland in Florida.

choice. *Storer*, 415 U.S. at 728, 94 S.Ct. 1274. Although the states may not infringe these liberties, they may regulate elections to ensure fairness and to prevent confusion. *Id.* at 730, 94 S.Ct. 1274. Applying these principles to independent candidates, then, the Supreme Court has declared that the citizens' right to have independents on the ballot is qualified only by three state interests:

> [T]he State is free to assure itself that the candidate is a serious contender, truly independent, and with a satisfactory level of community support.

*Id.* at 746, 94 S.Ct. at 1287.

■ Ordinarily, a state will transform these interests into legislated guidelines for the qualification of independent candidates for President and Vice President. When a state fails to do so, however, it creates an unconstitutional void in its electoral system.

> [T]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other . . . Must [the candidate] necessarily choose the political party route if he wants to appear on the ballot in the general election? We think not.

*Id.* at 745–46, 94 S.Ct. at 1286. To remedy this unconstitutional deprivation, the Supreme Court has instructed the judiciary to resolve the competing interests of the state, its candidates, and its citizens, in determining whether the first amendment requires a particular candidate's name to be placed on the ballot. *McCarthy v. Briscoe*, September 30, 1976, U.S. ——, 97 S.Ct. 10, 50 L.Ed. 2d 49.[4]

■ The balancing of interests in the *MacBride* case raises the question whether he and his running mate are "truly independent" candidates as required by *Storer.* Because the state has an important interest in preventing voter confusion, the first amendment requires placing on the ballot as independents only those candidates without substantial party affiliations. The essence of the constitutional cause of action here is the recognition that party candidates differ from independents. The former can claim ongoing party organizations to support their candidacies and ultimately their administrations. They also may be controlled by party ideologies, platforms, and personnel. On the other hand, while independents cannot offer a permanent organization on which to base their efforts, they can claim a freedom from the ties such organizations inherently create. These important distinctions should not be blurred by a constitutional mandate that a state list as an independent one who actually runs as a party candidate.

■ MacBride and Bergland are party candidates, not independents. They have received the nominations of the Libertarian Party for their respective offices. They have campaigned as the standard bearers of that Party in at least twenty-two states. In Florida, their party has qualified as a minor political party under state law. And they have conducted a six-week campaign as the Libertarian nominees. As a result, we cannot say that they are "truly independent" candidates whose names must be forced onto the Florida ballot as a matter of constitutional law.[5]

---

4. *McCarthy* examined the last of the three state interests—the substantiality of community support in Texas for Senator Eugene J. McCarthy's 1976 candidacy for President. In the independent judgment of Justice Powell, McCarthy had demonstrated substantial nationwide support for his candidacy. This showing raised the inference that similar support existed in Texas. Because the state did not rebut the inference, Justice Powell decided that sufficient support for the candidacy existed in Texas and therefore that no state interest could justifiably block the placement of McCarthy's name on

the ballot. Although we face a different issue here, *McCarthy* teaches that we must make an independent assessment of the state's interests.

5. This conclusion does not mean that we disagree with the decision of the district court on the standing of the plaintiffs. In its opinion, it held that MacBride and Bergland had standing to sue as independents even though they had attempted to qualify as minor party candidates under Florida law. Because the state had not provided a method of qualification for independents, the court rejected the theory that an attempt to qualify under the only available stat-

Because of our views on the merits of the *MacBride-Bergland* case, there is not a substantial likelihood that they will prevail on appeal. Consequently, their motion for a mandatory injunction pending appeal is DENIED.

ute should necessarily bar standing. This is a different question from the first amendment balance that requires a candidate to be "truly independent" before a state can be forced to place his name on the ballot.